

# THE ATTORNEY GENERAL
## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN 11, TEXAS

October 17, 1951

Hon. J. W. Edgar                    Opinion No. V-1324.
Commissioner of Education
Texas Education Agency         Re: Authority of Texas Edu-
Austin, Texas                         cation Agency to pay sal-
                                      aries from the $20,000
                                      appropriation in Art. IV
                                      of the current general
                                      appropriation Act com-
                                      parable to the positions
                                      specified by groups XV,
                                      XVI, or XVII in the Agen-
                                      cy's section of Art. III
Dear Dr. Edgar:                       of the same Act.

          We quote your letter as follows:

          "We desire an opinion from your office
regarding the salary limitations that apply
in expending the $20,000 appropriated to the
Texas Central Education Agency in Article IV
of the Appropriation Act of the Fifty-second
Legislature.

          "The appropriation to the Texas Central
Education Agency under Article III of the
Appropriation Act limits the number of posi-
tions that may be classified under groups
XVII, XVI and XV with no limitations as to
number of positions that may be assigned to
other groups in the classification program.

          "Do these limitations regarding the
number of positions included in the Depart-
mental Appropriation Act, Article III, apply
to the $20,000 appropriated to the Agency
under Article IV of the Appropriation Act?"

          Article III of House Bill 426, Acts 52nd Leg-
islature, 1951, the current biennial appropriation
bill, includes appropriations for the current biennium
for the Texas Central Education Agency. This section
begins as follows (Acts 52nd Leg., R.S. 1951, ch. 499,
p. 1228, at p. 1316):

"TEXAS CENTRAL EDUCATION AGENCY

"Group XVII:  1--None to exceed $17,500 per year.

"Description and duties:  Serves as Executive Officer of the State Board of Education performing those functions required by the Board and by law.

"Group XVI:  4--None to exceed $11,000 per year.

"Description and duties:  Under general direction of the Commissioner of Education, directs the activities of several divisions performing related functions.

"Group XV:  2--None to exceed $8,400 per year.

"Description and duties:  Under general direction of Associate Commissioner, directs the activities of the Division of Administrative Services, or the activities of the Division of Textbooks and Instructional Materials."

Article IV of House Bill 426, supra, at page 1443, provides for biennial appropriations to be allocated to the public junior colleges of Texas which meet the standards and eligibility requirements therein detailed.  Section 2 of Article IV assigns to the State Board of Education the duty of formulating rules and regulations governing eligibility of public junior colleges to share in a $4,309,200.00 biennial appropriation in accordance with certain specified factors.  It also empowers the Commissioner of Education to certify the eligibility of public junior colleges to share in this appropriation upon meeting the requirements of the law.  Further, it assigns to the Central Education Agency the function of determining whether each eligible junior college has complied with all the provisions of Section 2.  Section 2 concludes with this paragraph:

"From the appropriation made in Section 1 of this Article, there is hereby allocated the sum of Twenty Thousand Dollars ($20,000) for each of the fiscal years of the biennium

beginning September 1, 1951, to the Texas
Central Education Agency for the expense of
carrying out the functions and responsibil-
ities assigned to that Agency by this Arti-
cle."

Groups XVII, XVI, and XV, quoted above, are
the first of some eighteen like provisions found at the
beginning of the Texas Central Education Agency's sec-
tion of Article III, House Bill 426. These "groups"
appear without preface or introduction, preceded only
by the title, "Texas Central Education Agency." No
explanation, summary, or conclusion follows these pro-
visions. The following paragraph in the Act contains
annual appropriation items. The "groups" create a per-
sonnel classification program, but they do not appro-
priate funds. Provisions in general appropriation bills
which do not add funds to or take funds away from those
assigned by the Legislature to the particular uses enu-
merated are known as "non-appropriating" provisions;
non-appropriating provisions or riders in general appro-
priation bills are valid only when they detail, limit,
or restrict the use of funds therein appropriated and
when they are connected with and incidental to the ap-
propriations made. Attorney General's Opinion V-1254
(1951).

House Bill 426 represents a departure in form
from the pattern of the general appropriation measures
of recent Legislatures. It had been the recent practice
to enact separate appropriation bills for the Judiciary,
the Executive and administrative departments and agen-
cies, the eleemosynary institutions, the institutions of
higher learning, and the public junior colleges.[1] In
1951 the 52nd Legislature put all of these general ap-
propriations into one measure, House Bill 426. This
Act is divided into nine Articles, namely Article I,
Judiciary; Article II, State Hospitals, Special Schools

---

[1] See Acts, 51st Legislature, Regular Session, 1949--
House Bill 11, p. 612; House Bill 319, p. 1133; House
Bill 320, p. 1160; House Bill 321, p. 1070; and House
Bill 322, p. 1208. Acts 50th Legislature, 1947--
House Bill 52, p. 685; House Bill 244, p. 639; House
Bill 246, p. 649; Senate Bill 374, p. 566; and, Senate
Bill 391, p. 803.

and Youth Development Institutions; Article III, Executive and Administrative Departments and Agencies; Article IV, Public Junior Colleges; Article V, Agencies of Higher Education; Article VI, General Provisions; Article VII, Saving Clause; Article VIII, Suspending Clause; and Article IX, Emergency Clause. Had Articles III and IV of House Bill 426 been separate Acts, as was the prior practice, there could be no question but that a non-appropriating rider in one Act could have no application to an appropriation in another Act. Here, however, all is a single Act, and, having determined that these non-appropriating provisions have validity to the extent that they govern expenditure of funds appropriated in House Bill 426, we must yet determine their applicability to an appropriation contained in an Article other than that in which the non-appropriating provisions themselves appear.

Perusal of the contents of each "Article" reveals that each of the first five Articles of House Bill 426 covers a distinct field of State government, while the last four Articles, and these alone, have general application to all of the appropriations in the various other Articles of the entire Act. This is shown by the repeated words "this Act" found in Articles VI, VII, VIII, and IX. Like language is conspicuously absent in the first five Articles.

Evidence that the first five Articles are generally intended to be mutually exclusive, rather than generally controlling one another, is found in the Legislature's recognition of a need to incorporate identical riders in more than one Article.[2] There are also riders in different Articles which accord different treatment to identical subjects.[3] And the Legislature has expressly incorporated the provisions of certain riders from one

---

[2] See Sec. 8 of Art. I, p. 1240, and Subsec. (28), Sec. 2 of Art. III, p. 1442, Acts 52nd Leg., R.S. 1951.

[3] Compare Subsec. (12)g, Sec. 2 of Art. III, p. 1437, and Sec. 35 of Art. V, p. 1474, as respects the items for which receipts must be obtained.

Article into the riders of another Article.[4]  When the Legislature has done these three things, using explicit words to make appropriations in one Article subject to certain non-appropriating provisions in a different Article, using the same non-appropriating provisions in more than one Article, and treating the same general subject matter in different ways in other provisions of separate Articles, we are unable to assume that a non-appropriating provision in one Article governs the expenditure of an appropriation made in a different Article in the absence of specific language showing this result to be the Legislature's intention.

We are sustained in this view by the obvious import of subsection (16)b of Section 2 of Article III (Acts 52nd Leg., R.S. 1951, p. 1439), which provides in part:

"The appropriations herein provided are to be construed as the maximum sums to be appropriated to and for the several purposes named herein, and the amounts are intended to cover, and shall cover the entire cost of the respective items and the same shall not be supplemented from any other sources; . . ."

As the appropriations in Article III are the maximum ones allocated to the purposes of that Article, the appropriations in Article IV must be for other and different purposes.

If further evidence of the mutually exclusive character of Articles III and IV is needed, attention is invited to the wording of the last paragraph in Section 2 of Article IV, quoted above, reading:

"From the appropriation made in Section 1 of this Article, there is hereby allocated . . . to the Texas Central Education Agency for the expense of carrying out the functions and responsibilities assigned to that agency by this Article."  (Emphasis added.)

---

[4]  See Sec. 5(a), Art. I, p. 1240; Sec. 16, Art. II, p. 1296; Sec. 17, Art. II, p. 1297; and Secs. 26 and 27, Art. V, p. 1471.

          We can view the language emphasized above only as a clear expression by the Legislature that we need look only to the provisions of Article IV in determining the purposes for which and the manner in which the funds there appropriated may be used.  The Legislature recognizes that the duties required of the Texas Central Education Agency as incidental to the disbursement of the $4,309,200.00 appropriated to the public junior colleges will entail expenses on the part of the Central Education Agency additional to those provided for in Article III, and the Legislature leaves to the sound discretion of that agency a determination of the specific uses to which these funds will be devoted in carrying out these duties.

## SUMMARY

          Funds appropriated to the Texas Central Education Agency in Article IV of House Bill 426, Acts 52nd Leg., R.S. 1951, ch. 499, p. 1228, to defray expenses incident to certifying the eligibility of public junior colleges to receive State appropriations, are not subject to the personnel classification provisions in this agency's section of Article III of the same Act.

                              Yours very truly,

                              PRICE DANIEL
                              Attorney General

APPROVED:                     By  David B. Irons
                                  David B. Irons
Charles D. Mathews                Administrative Assistant
First Assistant


DBI:em